**Betty Jo DILLARD, Plaintiff,**

v.

**THOMASVILLE AUTO SALES, LLC, Defendant.**

**1:16cv47**

United States District Court, M.D. North Carolina.

Signed November 2, 2016

Holly Elizabeth Dowd, Weisberg & Meyers, LLC, Charlotte, NC, for Plaintiff.

Christopher Charles Finan, Andrew D. Irby, Roberson Haworth & Reese, P.L.L.C., High Point, NC, for Defendant.

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, District Judge

This case involves a claim that Defendant Thomasville Auto Sales, Inc. ("Thomasville") violated the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., by failing to adequately disclose the due dates of payments on a car loan. Before the court are Thomasville's motion for judgment on the pleadings (Doc. 12) and motion for sanctions (Doc. 14). For the reasons set forth below, the motion for judgment on the pleadings will be granted and the motion for sanctions will be denied.

## I. BACKGROUND

The facts, viewed in the light most favorable to Plaintiff Betty Jo Dillard as the nonmoving party, show the following:

On May 8, 2015, Dillard contracted with Thomasville to purchase and finance a 1999 Oldsmobile Cutlass automobile. (Doc. 1 at 2, ¶ 8.) At the signing of the loan, Thomasville provided Dillard with a disclosure form pursuant to TILA. (Doc. 1-1.) This disclosure form notes a total sale price of $4,835.03, broken down as follows:

an amount financed of $3,416.47, an annual percentage rate ("APR") of 29%, a total finance charge of $918.56, and total payments of $4,335.03. Printed on the disclosure form is a payment schedule across a grid of three columns and four rows. The columns are entitled "Number of Payments," "Amount of Payments," and "When Payments Are Due." Under the third column, labeled "When Payments Are Due," the rows in descending order are noted as "Weekly Beginning" and "Monthly Beginning."

On Dillard's copy of the form, all payment amounts and dates printed out are uniformly slightly misaligned, such that the number of payments, amount of payments, and dates of the first and last payments are printed on the lines separating the rows:

(Id.) Consequently, as can be seen in the image above, the number "19" printed in the first column lies on the line between "Weekly Beginning" and "Monthly Beginning." In similar fashion, the number "1" is printed in the first column on the line between "Monthly Beginning" and the last row. Under the "Amount of Payments," "220.00" appears on the line immediately across from the number "19" in the first column; and "155.03" appears across from the number "1." In the last column, the date "1/08/17" appears on the line across from "155.03", and "3/08/15" appears to the right of the number "220.00." The listed finance charge and total payments are consistent with the disclosed APR of 29%.

Dillard claims that the disclosure form violates TILA because an ordinary consumer could plausibly believe it to require the first nineteen payments to be made in either weekly intervals or monthly intervals.[1] (Doc. 1 at 3-4, ¶¶ 16-20.) Thomasville argues that the disclosure is clear and that Dillard's complaint is frivolous. Thomasville thus seeks an award of sanctions pursuant to Federal Rule of Civil Procedure 11. (Doc. 14.) The motions have been fully briefed and are ready for decision.

---

1. In reality, they were due in monthly intervals. (Doc. 11 at 13; Doc. 15 at 9.)

## II. ANALYSIS

### A. Motion for Judgment on the Pleadings

▮▮▮ Both parties attach documents to their pleadings and briefs. (Doc. 1-1; Doc. 11 at 11–16; Doc. 15-1; Doc. 15-2.) While matters outside the pleadings are generally not considered on a Rule 12 motion without it being converted to one for summary judgment, see Fed. R. Civ. P. 12(d); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004), documents are not "outside the pleadings" if the factual allegations of the complaint are "expressly linked to and dependent upon" them, Williams v. Branker, No. 11–6329, 462 Fed.Appx. 348,2012 WL 165035, at *3 (4th Cir. Jan. 20, 2012)[2] (citing Am. Chiropractic Ass'n, 367 F.3d at 234). See also Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (holding that when a party attaches a document to a pleading, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the [other party] do[es] not challenge its authenticity"). Here, the complaint's factual allegations are expressly linked to and dependent upon Dillard's first exhibit to her complaint (Doc. 1-1)—her copy of the TILA disclosure form, the authenticity of which neither party challenges.[3] Thus, the court will decide the matter as a Rule 12(c) motion for judgment on the pleadings, considering the pleadings and Dillard's copy of the TILA form.

▮▮▮ "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (quoting Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014)). The court "accept[s] all well-pleaded allegations of [the] complaint as true and draw[s] all reasonable factual inferences in [the plaintiff's] favor." Id. In applying those standards, "the complaint will survive only if it 'states a plausible claim for relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Dillard relies on Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir. 1983), in which the court found liability for a technical error in the use of the term "total time balance" instead of "total of payments." In doing so, the court stated that to ensure "that the consumer is protected, as Congress envisioned, requires that the provisions of [TILA] and the regulations implementing it be absolutely complied with and strictly enforced." Id. at 67. Dillard argues that the technical errors in Thomasville's disclosure form similarly constitute a violation.

However, as Thomasville notes, in subsequent cases the Fourth Circuit has contextualized Mars. For example, in American Mortgage Network, Inc. v. Shelton, 486 F.3d 815 (4th Cir. 2007), the court stated: "In [Mars], this Court held that the

---

**2.** Unpublished opinions of the Fourth Circuit are not precedential. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

**3.** Thomasville offers its copy of the same disclosure form (Doc. 11 at 14), which has a more properly aligned payment schedule, not to challenge the authenticity of Dillard's statement, but instead to support its argument that any error in Dillard's copy is a bona fide error within the meaning of 15 U.S.C. § 1640(c). (See id. at 5–6.) Because the court does not reach this argument, it need not determine the propriety of considering this exhibit at this stage.

provisions of TILA must be 'absolutely complied with and strictly enforced.' This was not to imply, however, that the Act's requirements should not be reasonably construed and equitably applied." Id. at 819 n.4 (citations omitted). The court repeated this statement in Watkins v. SunTrust Mortgage, Inc., 663 F.3d 232, 239–40 (4th Cir. 2011).

Dillard contends that any discussion in Shelton and Watkins directing courts to apply TILA reasonably and equitably is dicta (Doc. 15 at 3-5) and, alternatively, that Shelton was an unsuccessful attempt to overturn Mars (id. at 5 (citing Watkins, 663 F.3d at 241 (Wynn, C.J., dissenting))). Dillard is correct that Mars remains good law, but Shelton's clarification cannot be ignored. Indeed, in Larrabee v. Bank of America, N.A., 714 F.Supp.2d 562 (E.D. Va. 2010), aff'd No. 10–2416, 474 Fed. Appx. 940, 2012 WL 1072769 (4th Cir. Apr. 2, 2012), the Fourth Circuit affirmed the district court, which relied on Shelton to dismiss a similar claim where the payment schedule printout was apparently not perfectly aligned with the disclosure form's columns.

■■■ The relevant portion of TILA and its implementing "Regulation Z" require a lender to disclose "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(6); see 12 C.F.R. § 226.18(g). The adequacy of a lender's disclosure is determined on an objective standard, regardless of what the consumer actually believes the form means. See Larrabee, 714 F.Supp.2d at 567–68 (collecting cases and applying a "reasonable-consumer" standard). If a reasonable consumer could plausibly interpret a TILA disclosure in more than one way, the lender has not complied with TILA. See id. at 568 (citing Handy v. Anchor Mortg. Corp., 464 F.3d 760, 764 (7th Cir. 2006)).

■■■ The court finds that in this case no reasonable consumer would interpret the disclosure form in the manner Dillard argues, and it would not be reasonable and equitable to do so. The construction Dillard proposes—that the first nineteen payments were to be made weekly, beginning one month after closing, and that the final "monthly" payment was to be made fifteen months later—is implausible for several reasons: it yields an outlandish APR, contradicts the form's own terms, and fails to explain why the final payment would be referred to as a "monthly" payment. Dillard's proposed interpretation would mean that she was to borrow $3,416.47, pay $4,180.00 in the following nineteen weeks, and then—fifteen months after the final weekly payment—make a final "monthly" payment. This yields an effective APR of 84% (Doc. 15 at 10), contradicting the APR disclosed on the top of the form, 29% (Doc. 1-1). Dillard's reading of the disclosure form would also contradict its other terms, including the finance charge, amount financed, total payment amount, and total sale price.

Instead, the only plausible interpretation is that the two lines in question belong in the rows in which the characters' lower halves sit, such that the first nineteen payments are to be made monthly beginning one month after closing and the twentieth payment is to be made one month after the nineteenth payment. This is consistent with the APR, finance charge, and all other figures on the form. Furthermore, the other entries on the form are printed well above the lines on which they belong, such that the reader can easily see that for some reason the form was not fully centered when printed, that all figures appear slightly higher than normal on the page, and that the payment figures therefore should have been printed slightly lower on the page. It is also clear that all printed amounts, dates, and payments match each

other horizontally. Thus, had the form been printed correctly, the first line would be printed on the "monthly" row and the second line on the row directly below it (which is unlabeled). (See Doc. 1-1.)

This conclusion finds support in Larrabee. There, the court similarly dismissed a TILA claim where the form in question was claimed to be ambiguous as to when payments would be due. 714 F.Supp.2d at 567–68. The court found that no reasonable consumer could construe the payment schedule to reach the plaintiff's interpretation. As in the present case, the Larrabee plaintiff's reading would have yielded a wholly unreasonable APR and a strange payment schedule.

Dillard attempts to distinguish Larrabee on two grounds. First, she argues that her alternative interpretation is plausible whereas Larrabee's was not, repeating the arguments in support of her alternative interpretation. (Doc. 15 at 8-11.) While it is true that Larrabee's proposed interpretation was even more implausible than Dillard's—for example, yielding an even higher APR—all other aspects of Dillard's argument mirror those in Larrabee and continue to demonstrate the implausibility of her position.

Second, Dillard argues that Larrabee was decided on equitable grounds because it dealt with a mortgage, whereas this case involves a car loan. (Doc. 15 at 12.) She is correct that TILA contains special provisions regarding the right of rescission for mortgages and other secured transactions, see 15 U.S.C. § 1635, and that rescission is an equitable remedy. But in this respect, she reads Shelton too narrowly. While the claim in Shelton involved a mortgage, nothing in Shelton limits its interpretive canon to mortgages, and other courts have applied that canon to non-mortgage loans. See, e.g., Smith v. Chapman, 614 F.2d 968, 972 (5th Cir. 1980) (resolving a claim involving a car loan and stating that "[s]trict

compliance [with TILA] does not necessarily mean punctilious compliance").

The court therefore finds that the only plausible interpretation of Dillard's copy of the TILA disclosure form is the one Thomasville advances. Consequently, Thomasville's motion for judgment on the pleadings will be granted.

### B. Motion for Sanctions

■ Thomasville moves for sanctions against Dillard under Federal Rule of Civil Procedure 11(c) on the bases that Dillard brought her action to extort a settlement from Thomasville (Doc. 14 at 5) and that Dillard's claim is frivolous (id. at 4–6). Thomasville claims that before Dillard filed her complaint, her counsel "demanded" $7,500 from Thomasville to release her claims. (Id. at 1, ¶ 2.) Thomasville argues further that Larrabee and the bona fide error rule render her claim frivolous. (Id. at 4–6.)

Thomasville does little to support its allegation that Dillard or her counsel had an improper purpose in bringing this lawsuit. See Fed. R. Civ. P. 11(b)(1). The only evidence it offers is its account of counsel's settlement demand, which Thomasville characterizes as an effort to extort money from it. Even if taken as accurate, this account fails to demonstrate improper purpose. Had Dillard won on the merits of her claim, she could have been awarded actual damages, twice the original financing charge, and attorneys' fees and costs. See 15 U.S.C. §§ 1640(a)(1)–(3). Whatever the possible recovery, $7,500 is not extortionate.

■ As to Thomasville's argument that Dillard's claim is frivolous, Rule 11 required Dillard's counsel to "conduct a reasonable investigation of the factual and legal basis for [her] claim before filing." Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991). To be reasonable, the attorney's investigation must

yield "some [factual] information" and "some basis in law" to support the claims. Id. "[U]nartful pleading, such as through a vague and conclusory complaint, is irrelevant to the factual and legal inquiry required under Rule 11." Id. (citing Simpson v. Welch, 900 F.2d 33, 36 (4th Cir. 1990)). "[C]reative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." Id. (citing Davis v. Carl, 906 F.2d 533, 536 (11th Cir. 1990) (alteration in original)).

Here, Dillard's counsel had factual and legal bases, though weak ones, for Dillard's claim. The factual basis was that Dillard's TILA form was misprinted (albeit harmlessly), and the legal basis was that some courts enforce TILA hyper-technically. Dillard's reliance on Mars is not frivolous or in bad faith; it is simply incomplete. Likewise, Larrabee did not render Dillard's argument frivolous. That case was decided by another district court and affirmed in a short, unreported opinion. It thus is not binding precedent and only informs this court's decision insofar as this court finds its reasoning persuasive. See Collins, 468 F.3d at 219.

Thomasville's argument regarding the bona fide error defense is equally unpersuasive. To assert this defense successfully, Thomasville would have to show by a preponderance of the evidence that the error occurred notwithstanding the "maintenance of procedures reasonably adapted to avoid" it. 15 U.S.C. § 1640(c); see also Handy v. Anchor Mortg. Corp., 464 F.3d 760, 764 (7th Cir. 2006) (rejecting a bona fide error defense because the lender failed to produce evidence of such procedures). Apart from the fact that the court cannot decide such a factual issue at this pleadings stage, the record fails to indicate that Dillard had any knowledge of Thomasville's TILA procedures. Thus, Dillard cannot be expected to predict the assertion or success of this defense.

The court therefore finds that neither Dillard nor her counsel brought this claim for an improper purpose or failed to conduct a reasonable investigation of the factual and legal bases for it before filing the lawsuit. Thomasville's motion for sanctions will therefore be denied.

### III. CONCLUSION

For the reasons stated, the court finds that the disclosure form complied with TILA and that neither Dillard nor her counsel violated Rule 11.

IT IS THEREFORE ORDERED that Thomasville's motion for judgment on the pleadings (Doc. 12) is GRANTED and that this action is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Thomasville's motion for sanctions (Doc. 14) is DENIED.